IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **RUSSEL K. IPSON,** <br><br> **Plaintiff,** <br><br> v. <br><br> **NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,** <br><br> **Defendant.** | **REPORT AND RECOMMENDATION** <br><br> **Case No. 2:14-cv-00852-TS-PMW** <br><br> **District Judge Ted Stewart** <br><br> **Chief Magistrate Judge Paul M. Warner** |

District Judge Ted Stewart referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[2] Before the court is Russel K. Ipson's ("Plaintiff") appeal of the Commissioner's final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 401-434. After careful consideration of the written briefs and the complete record, the court has determined that oral argument is not necessary in this case.

At the outset, the court recognizes that Plaintiff is proceeding pro se in this case. Accordingly, the court will construe his pleadings liberally. *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill has been substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this action. *See* docket no. 26.

[2] *See* docket no. 12.

**BACKGROUND**

Plaintiff alleges disability due to various physical and mental impairments. In September 2011, Plaintiff applied for DIB, alleging disability beginning on February 1, 2010.[3] Plaintiff's application was denied initially and upon reconsideration.[4] On March 28, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),[5] and that hearing was held on March 11, 2013.[6] On March 27, 2013, the ALJ issued a written decision denying Plaintiff's claim for DIB.[7] On September 15, 2014, the Appeals Council denied Plaintiff's request for review,[8] making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

On November 20, 2014, Plaintiff filed his complaint in this case,[9] which was assigned to Judge Stewart.[10] After some proceedings irrelevant to this report and recommendation, this case was referred to Chief Magistrate Judge Warner under 28 U.S.C. § 636(b)(1)(B) on June 10,

---

[3] *See* docket no. 18, Administrative Record ("Tr. ____") 186-87.

[4] *See* Tr. 121-34, 135-48.

[5] *See* Tr. 160-61.

[6] *See* Tr. 71-120.

[7] *See* Tr. 18-44.

[8] *See* Tr. 3-8.

[9] *See* docket no. 3.

[10] *See* docket no. 4.

2016.[11]  The Commissioner filed her answer and the administrative record on September 27, 2016.[12]

Plaintiff filed his opening brief on March 13, 2017.[13]  The Commissioner filed her answer brief on May 9, 2017.[14]  Plaintiff did not file a reply brief by the required deadline of May 30, 2017.

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been

---

[11] *See* docket no. 12.

[12] *See* docket no. 16, 18.

[13] *See* docket no. 21.

[14] *See* docket no. 25.

followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. § 404.1520(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

> Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . .

*Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(iii).

At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). "If the claimant is able to perform his

previous work, he is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id*. At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work in the national economy in view of his age, education, and work experience." *Id*.; *see* 20 C.F.R. § 404.1520(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. § 404.1520(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," *id*., he is disabled and entitled to benefits.

## **ANALYSIS**

As the Commissioner has noted, it is difficult to discern from Plaintiff's opening brief the precise errors he believes the ALJ committed. However, it appears that Plaintiff is arguing that the ALJ (1) violated Plaintiff's due process rights by not allowing Plaintiff to fully present his case at the administrative hearing, (2) erred at step two by failing to sufficiently address the limitations arising from several of Plaintiff's alleged impairments, and (3) erred in the assessment of Plaintiff's RFC. The court will address those arguments in turn.

**I. Due Process**

Procedural due process applies to Social Security hearings. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005). However, in order to establish a due process violation, Plaintiff must demonstrate that he was prejudiced. *See*

*Mays v. Colvin*, 739 F.3d 569, 572-74 (10th Cir. 2014). Contrary to Plaintiff's assertion that he "was not given the opportunity to defend [his] case at the hearing," "was not heard at all," and "was not able to say anything,"[15] both his attorney and the ALJ questioned him extensively about his medical conditions.[16] When Plaintiff's attorney asked him if there was anything he missed or anything additional that Plaintiff believed the ALJ should know about, Plaintiff said, "I can't think of anything."[17] Furthermore, when the ALJ asked Plaintiff if they had covered everything that Plaintiff could think of that would affect his ability to work full time, Plaintiff responded, "I think so, yes."[18]

"[D]ue process requires notice and a meaningful opportunity to be heard." *In re C.W. Mining Co.*, 625 F.3d 1240, 1244 (10th Cir. 2010). Plaintiff appeared and had an opportunity to be heard before the ALJ. There was no denial of due process.

Plaintiff's brief may be read to argue a due process violation related to the fact that the ALJ who presided over his hearing and issued the decision was not the same ALJ who was originally scheduled to hear his case. However, as with his other due process argument, he has not pointed to any prejudice resulting from the substitution. *See Mays*, 739 F.3d at 572-74 (requiring prejudice for a due process violation). Accordingly, this argument fails.

---

[15] Docket 21 at 2.

[16] *See* Tr. 77-111.

[17] Tr. 97.

[18] Tr. 112.

## II. Step Two

Plaintiff's arguments may also be read to suggest that the ALJ did not sufficiently consider at step two whether certain of his impairments qualified as severe. "[A]t step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]." *Carpeneter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (quotations and citations omitted) (second and third alterations in original). The Tenth Circuit has explained that any error committed in that consideration is rendered "harmless when the ALJ reache[s] the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceed[s] to the next step of the evaluation sequence." *Id*.

In this case, the ALJ determined that Plaintiff suffered from several severe impairments. Consequently, the ALJ concluded that Plaintiff could not be denied benefits at step two and proceeded to step three of the sequential evaluation process. Therefore, Plaintiff's argument with respect to the ALJ's step two analysis must fail. *See id*.

## III. RFC

As noted by the Commissioner, Plaintiff bore the burden of proving that he had functional limitations that should be included in his RFC. *See* 20 C.F.R. §§ 404.1512(a), 404.1545(a)(3). A claimant's RFC is the most that he can do despite his limitations. *See* 20 C.F.R. § 404.1545(a)(1). In this case, the ALJ reasonably considered the evidence and found that it supported limiting Plaintiff to a range of sedentary to light work.

"Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence." *Newbold v. Colvin*,

718 F.3d 1257, 1267 (10th Cir. 2013) (quotations and citation omitted). "Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. As a result, the ALJ's credibility findings warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). "That deference is especially appropriate here, as the ALJ provided a number of good reasons grounded in record evidence for discounting Plaintiff's subjective complaints.[19]

The ALJ's overarching concern with Plaintiff's complaints of disabling symptoms was the evidence of significant noncompliance throughout the record.[20] *See* 20 C.F.R. § 404.1529(c)(4) (providing that the ALJ considers inconsistencies in the evidence when assessing symptoms); Social Security Ruling ("SSR") 96-7p (providing that a claimant's "statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"); *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000) (concluding that the ALJ reasonably determined that the claimant failed to follow prescribed treatment). Plaintiff's treating providers, Dr. Patrick Zimmerman and Dr. Joshua Romney, repeatedly noted Plaintiff's failure to, among other things, take his medication as prescribed, test his blood sugars regularly, or eat a diabetes-compliant diet.[21] It was reasonable for the ALJ to question whether Plaintiff's diabetes limited him as much as he claimed, given his failure to follow his providers' treatment advice.

---

[19] *See* Tr. 30-36.

[20] *See* Tr. 28, 32-34.

[21] *See* Tr. 378, 382, 384, 408, 411, 421, 424, 426, 428, 451, 493, 501.

The ALJ recognized that Plaintiff reported his noncompliance was the result of financial difficulties, including a lack of insurance.[22] However, the ALJ noted the lack of evidence that Plaintiff sought free or low-cost healthcare.[23] *See* SSR 96-7p (providing that when a claimant asserts that he cannot afford treatment, an ALJ may consider whether the claimant had access to free or low-cost medical services); *Qualls*, 206 F.3d at 1372-73 (concluding that the ALJ reasonably noted the availability of free medical care and found the claimant failed to follow prescribed treatment). Consistent with the ALJ's finding that Plaintiff could have been compliant if he had sought free or low-cost treatment, Dr. Romney located free or low-cost blood sugar test strips for him when he told Dr. Romney he could not afford them.[24] The ALJ also noted that some of the recommended treatment (*e.g.*, following a good diet, walking, and exercising) was free or low-cost, and thus would not have been impacted by Plaintiff's financial difficulties.[25]

The ALJ also contrasted Plaintiff's complaints with objective medical evidence.[26] *See* 20 C.F.R. § 404.1529(c)(4) (stating the ALJ "will evaluate [the claimant's] statements in relation to the objective medical evidence"); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (providing that in assessing symptoms, an ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence"). While Plaintiff complained of weakened vision, the ALJ noted that the only evidence in the record was that Plaintiff's vision

---

[22] *See* Tr. 32-33, 384, 428, 501.

[23] *See* Tr. 32, 34.

[24] *See* Tr. 428-29.

[25] *See* Tr. 33.

[26] *See* Tr. 35-36.

9

was corrected with lenses.[27] Plaintiff reported tingling and numbness in his hands and feet (peripheral neuropathy), but the ALJ noted findings of normal strength, no edema or numbness, and no nerve conduction studies showing neuropathy.[28] Plaintiff's report that he continued to experience significant cardiac issues was inconsistent with examination findings of normal cardiac function.[29] Plaintiff's allegation of disability due to renal insufficiency was undermined by providers' repeated notation that his renal function was stable.[30] The ALJ noted that Plaintiff's reports of IBS were contradicted by evidence that his gastrointestinal difficulties were related to antibiotics taken for a staph infection and that those difficulties resolved after he stopped taking the antibiotics.[31] Despite Plaintiff's reports of debilitating hypertension, the ALJ noted providers' findings that his high blood pressure was well-controlled with medication.[32] *See* 20 C.F.R. § 404.1529(c)(e)(iv) (providing that an ALJ considers the effectiveness of treatment in evaluating symptoms).

Although Plaintiff claimed that he became disabled in February 2010, the ALJ recognized that the alleged onset of Plaintiff's disability coincided with when he was let go from his job for reasons unrelated to his medical conditions.[33] *See* 20 C.F.R. § 404.1529(c)(3) (providing that the

---

[27] *See* Tr. 35, 79, 439.

[28] *See* Tr. 35, 216-17, 419, 421, 458, 493-95, 501-02.

[29] *See* Tr. 35, 221, 440.

[30] *See* Tr. 35, 216, 459, 461.

[31] *See* Tr. 35-36, 216-17, 406.

[32] *See* Tr. 35, 408, 413, 416, 443, 446, 493, 501.

[33] *See* Tr. 36, 98, 212, 434.

ALJ can consider evidence about a claimant's prior work record in evaluating symptoms); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (indicating that a claimant's admission that she did not leave employment as a result of a health-related impairment was relevant to a determination of disability).

Similarly, the ALJ noted that, during the same period that Plaintiff alleged he was totally incapable of performing any work for purposes of Social Security disability, he was receiving unemployment benefits by telling the State of Utah that he was ready, willing, and able to work in order to receive unemployment benefits.[34] *See Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) ("There is an obvious inconsistency between claiming an *ability* to work for purposes of obtaining unemployment compensation and claiming an *inability* to work for purposes of obtaining social security benefits. The ALJ was thus entitled to rely on Pickup's receipt of unemployment benefits as a reason weighing against the credibility of her claim of a completely disabling impairment.").

Finally, Plaintiff's self-admitted daily activities were not as limited as one would expect, given his reported symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i) (providing that the ALJ considers a claimant's activities in evaluating symptoms); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (concluding that the ALJ reasonably found a claimant's description of her daily activities did not indicate significant limitations). At his October 2011 examination by Dr. Lisa McGill, Plaintiff indicated that he did the laundry, cleaned, washed dishes, cooked, shopped, and cared for the children.[35] He said he walked three times per week with his dog and helped the

---

[34] *See* Tr. 36, 188.

[35] *See* Tr. 435.

children with yard work.³⁶  Plaintiff told Dr. Richard Ingebretsen that he was able to prepare meals, cook, clean, and walk for a mile with his dog.³⁷  Plaintiff also indicated that he had played baseball in May 2012.³⁸

Taken together, the ALJ provided a number of good reasons for finding that Plaintiff was not as limited as he claimed.  Where, as here, there is conflicting evidence, the court's role is solely to consider whether substantial evidence supports the ALJ's decision.  *See Perales*, 402 U.S. at 401.  So long as the ALJ's assessment of the evidence was one reasonable interpretation, the ALJ's assessment controls.  *See Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (concluding that, when reviewing under sentence four of 42 U.S.C. § 405(g), a court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the court believes the evidence is "equivocal" ); *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (alteration in original) (quotations and citations omitted)).

For those reasons, the court concludes that the ALJ did not err in his assessment of Plaintiff's RFC.

---

³⁶ *See id*.

³⁷ *See* Tr. 439.

³⁸ *See* Tr. 499-500.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the court concludes that all of Plaintiff's arguments fail. Accordingly, IT IS HEREBY RECOMMENDED that the Commissioner's decision in this case be AFFIRMED.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 8th day of September, 2017.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge